**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                             :
BRUCE GUNN,                  :
                             :       Civil No. 08-6368 (RMB)
          Petitioner,        :
                             :
     v.                      :
                             :              OPINION
HARRY LAPPIN, et al.,        :
                             :
          Respondents.       :
_____:
```

**APPEARANCES:**

> BRUCE GUNN, Petitioner pro se
> #19381-038
> F.C.I. Fairton
> P.O. Box 420
> Fairton, New Jersey 08320

**BUMB, District Judge**

Petitioner, Bruce Gunn ("Gunn"), a federal prisoner confined at the Federal Correctional Institution in Fairton, New Jersey ("FCI Fairton"), resubmits his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Docket entry no. 4). Gunn names Warden Paul M. Schultz, the Warden at FCI Fairton where petitioner is confined, and Harry Lappin, Director of the Federal Bureau of Prisons, as the party respondents in this action.

The Court will direct the Clerk of the Court to re-open this matter, which was dismissed for failure to exhaust administrative remedies by Opinion and Order dated May 29, 2009. Because it

appears from a review of the resubmitted Petition that Gunn is
not entitled to issuance of the writ, the Court will dismiss the
Petition, pursuant to 28 U.S.C. § 2243, for the reasons set forth
below.

I.  <u>BACKGROUND</u>

Gunn is presently serving a 235-month prison term pursuant
to his federal conviction by jury trial in the United States
District Court for the District of Massachusetts, on charges of
being a felon in possession of a firearm, in violation of 18
U.S.C. § 922(g).

Gunn currently is serving his prison sentence at FCI
Fairton.  In his initial habeas petition, Gunn stated that he had
applied for and had been tentatively accepted in the Choices
Residential Drug Treatment Program run by Dr. Rodondo at FCI
Fairton.  However, Dr. Rodondo had told Gunn that Gunn would not
receive the benefit of early release upon completion of the
program because Gunn was convicted for being a felon in
possession of a firearm.

Gunn admitted that at the time he filed his initial habeas
petition under § 2241, he had not fully exhausted his
administrative remedies.  In fact, he acknowledged that he had an
administrative appeal pending before the Regional Director's
Office, Appeal No. 518055-F1.  The administrative appeal
challenged the Bureau of Prisons ("BOP") decision to deny him

2

early release upon successful completion of the residential drug treatment program.

Furthermore, Gunn did not state in his initial petition whether he had successfully completed the residential drug treatment program at FCI Fairton.  Rather, he alleged only that he had applied for and was "tentatively" accepted into the program.  Gunn argued that the BOP's decision to exclude him from the benefit of a sentence reduction under 18 U.S.C. § 3621(e)(2)(B), pursuant to a final agency rule under 28 C.F.R. § 550.58(a)(1)(vi)(B), is arbitrary, capricious and an abuse of discretion, and otherwise illegal under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A).  Specifically, Gunn alleged that rationale in adopting a rule to categorically exclude from eligibility for early release those prisoners convicted of offenses involving the possession of a firearm was irrational and not based upon any relevant factors.

Gunn further claimed that he was convicted of a non-violent offense of simple possession of a firearm by a felon in violation of 18 U.S.C. § 922(g), and that the United States Court of Appeals for the Third Circuit has found that such an offense in not a crime of violence, citing Royce v. Hahn, 151 F.3d 116 (3d Cir 1998); Roussos v. Menifee, 122 F.3d 159, 163 (3d Cir. 1997); United States v. Joshua, 976 F.2d 844 (3d Cir. 1992); and United States v. Williams, 892 F.2d 296, 304 (3d Cir. 1989).

On May 29, 2009, this Court dismissed Gunn's initial habeas petition, without prejudice, for failure to exhaust administrative remedies.[1]  See May 29, 2009 Opinion and Order (Docket entry nos. 2 and 3).

On September 17, 2009, Gunn resubmitted his habeas petition, stating that he has now exhausted all administrative remedies. It is not clear whether Gunn has completed the residential drug abuse program ("RDAP") at the time he resubmitted his petition. Gunn's resubmitted petition asserts the same arguments or claims for relief as his initial petition, and in fact, appears to be the same petition, with the exception that he has provided a copy of the August 10, 2009 Decision by Harrell Watts, Administrator of the National Inmate Appeals.

In response to Gunn's final administrative appeal, Administrator Watts stated:

---

[1]  This Court further noted, in its May 29, 2009 Opinion, that Gunn was not then eligible for early release under 18 U.S.C. § 3621(e)(2)(B) because he had not successfully completed all of the requirements of the RDAP.  Gunn must complete the 500-hour residential program, as well as the institutional transition phase or the community transitional services program that also are required to be considered for successful completion of a RDAP.  See 28 C.F.R. §§ 550.56, 550.59; Program Statement 5330.10.

Consequently, at the time he filed the initial petition, Gunn also did not appear to be eligible for consideration for early release because he had not actually successfully completed the program, notwithstanding the fact that he was told he is ineligible for consideration by virtue of his conviction for an offense involving the possession of a firearm.

4

You were convicted of 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm.  On March 13, 2009, a determination was made during your Drug Abuse Program Coordinator clinical interview that you were ineligible for the early release benefit based on the provisions of P.S. 5162.04, <u>Categorization of Offenses</u>.  According to P.S. 5162.04, at the Director's discretion, all offenses under 18 U.S.C. § 922(g) shall preclude an inmate from receiving certain Bureau program benefits, including early release.  The decision in <u>Arrington v. Daniels</u>, 516 F.3d 1106 (9th Cir. 2008), does not change the analysis of your case insofar as you are not currently housed in an institution within the Ninth Circuit nor did you complete the unit-based portion of the RDAP in an institution within the Ninth Circuit.  There is no entitlement to an early release sentence reduction. We concur with the decision that you are precluded from receiving early release under 18 U.S.C. § 3621(e). Accordingly, your appeal is denied.

(<u>See</u> Docket entry No. 4 at pg. 35, August 10, 2009 National

Inmate Appeals Response by Administrator Watts).

II.  <u>ANALYSIS</u>

A.  <u>Standard of Review</u>

United States Code Title 28, Section 2243 provides in

relevant part:

A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

The Court recognizes that a <u>pro se</u> pleading is held to less

stringent standards than more formal pleadings drafted by

attorneys.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v.

Kerner</u>, 404 U.S. 519, 520 (1972).  Thus, a <u>pro se</u> habeas petition

should be construed liberally and with a measure of tolerance.

See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989).  Because Gunn is proceeding pro se in his application for habeas relief, the Court will accord his petition the liberal construction intended for pro se litigants.

B.  An Overview of the RDAP

The Violent Crime Control and Law Enforcement Act of 1994 ("VCCLEA") amended 18 U.S.C. § 3621 to require the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse."  18 U.S.C. § 3621(b).  To carry out this requirement, the BOP must provide residential substance abuse treatment for all eligible inmates, subject to the availability of appropriations.  18 U.S.C. § 3621(e)(1).  An "eligible prisoner" is one who is "determined by the Bureau of Prisons to have a substance abuse problem," and who is "willing to participate in a residential substance abuse treatment program."  18 U.S.C. § 3621(e)(5)(B)(I) and (ii).  As an incentive for the successful completion of the residential treatment program, the BOP **may**, in its discretion reduce an inmate's sentence by up to one year.  18 U.S.C. § 3621(e)(2)(B); see also Lopez v. Davis, 531 U.S. 230 (2001).

The incentive provision of the statute reads, in pertinent part:

> The period a prisoner convicted of a **nonviolent offense**
> remains in custody after successfully completing a treatment
> program **may** be reduced by the Bureau of Prisons, but such
> reduction may not be more than one year from the term the
> prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B).  (Emphasis added).

The BOP has promulgated regulations at 28 C.F.R. § 550.56 to

implement the statutory requirement.  According to the

regulations, in order to be considered for a residential

treatment program, an inmate must have a verifiable drug abuse

problem, must have no serious mental impairment which would

substantially interfere with or preclude full participation in

the program, must sign an agreement acknowledging his program

responsibility, and must ordinarily be within 36 months of

release and the security level of the residential program

institution must be appropriate for the inmate.  28 U.S.C. §

550.56(a).  Participation in the program is voluntary, but all

decisions on placement are made by the drug abuse treatment

coordinator.  See 28 C.F.R. § 550.56(b).  The application of

§ 550.56 is set forth in BOP Program Statement 5330.10.[2]

---

[2]  Program Statement 5330.10 defines the RDAP as consisting
of three components: (1) a 500-hour minimum unit-based
residential program; (2) an institution transition phase, which
requires participation for a minimum of one hour a month over a
period of 12 months after successfully completing the unit-based
program; and (3) a community transitional services program where
the inmate is transferred to a halfway house or home confinement
for a period lasting up to six months.  Successful completion of
the RDAP occurs upon successful completion of each of these three
components of the RDAP.  See 28 C.F.R. §§ 550.56, 550.59.

In these regulations, the BOP also defined prisoners who had not been convicted of a nonviolent offense, and who thus were ineligible for early release, as those prisoners who were currently incarcerated for committing a crime of violence as defined in 18 U.S.C. § 924(c)(3).  28 C.F.R. § 550.58 (1995); <u>see</u> 60 Fed. Reg. 27,692, at 27,695.  Following the promulgation of this 1995 regulation, the Courts of Appeals reached differing conclusions on the question of whether the BOP had discretion to further define a crime of violence as an offense involving a firearm, and thus exclude from eligibility for the early release incentive those prisoners who were incarcerated for such offenses.  See <u>generally</u> <u>Lopez v. Davis</u>, 531 U.S. at 234-35.[3]

_____

[3]  In <u>Lopez</u>, the Supreme Court held that it was a proper exercise of discretion by the Bureau of Prisons to categorically deny eligibility for early release to prisoners with "a prior felony or misdemeanor conviction for homicide, forcible rape, robbery, or aggravated assault, or child sexual abuse offenses," 28 C.F.R. § 550.58(a)(1)(iv), or to prisoners whose current offense is one of certain enumerated felonies involving the use or attempted use of force, or involving the carrying, possession, or use of a firearm or other dangerous weapon, or involving sexual abuse upon children, 28 U.S.C. § 550.58(a)(1)(vi).  In reaching this conclusion, the Court first noted that the language of § 3621(e)(2)(B) grants the Bureau discretion to reduce a prisoner's sentence for successful completion of a substance abuse treatment program, but fails to define any parameters by which the Bureau should exercise that discretion.

In this familiar situation, where Congress has enacted a law that does not answer "the precise question at issue," all we must decide is whether the Bureau, the agency empowered to administer the early release program, has filled the statutory gap "in a way that is reasonable in light of the legislature's revealed design."  We think the agency's interpretation is reasonable both in taking account of preconviction

Given the split among the Circuits, the BOP promulgated an interim regulation on October 15, 1997, and made the regulation effective approximately one week prior, on October 9, 1997.  28 C.F.R. § 550.58(a)(1)(vi)(B)(1997); 62 Fed. Reg. 53,690.  The 1997 interim regulation, like the one it superceded, made ineligible for the early release incentive those prisoners incarcerated for an offense that involved the possession, use, or carrying of a firearm.  28 C.F.R. § 550.58(a)(1)(vi)(B).  The 1997 interim regulation differs from the 1995 regulation by relying on "the discretion allotted to the Director of the Bureau of Prisons in granting a sentence reduction to exclude [enumerated categories of] inmates," 62 Fed. Reg. At 53,690, rather than purporting to define the statutory terms "prisoner convicted of a nonviolent offense" or "crime of violence."

The commentary accompanying publication of the 1997 interim regulation noted that the BOP was "publishing this change as an interim rule in order to solicit public comment while continuing to provide consideration for early release to qualified inmates."

_____

conduct and in making categorical exclusions.

Lopez, 531 U.S. at 242 (citing, inter alia, Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc., 467 U.S. 837, 842 (1984))(other citations omitted).  Thus, "the statute's restriction of early release eligibility to nonviolent offenders does not cut short the considerations that may guide the Bureau." Lopez, 531 U.S. at 242.  See also Magnin v. Beeler, 110 F.Supp.2d 338 (D.N.J. 2000) (upholding 28 C.F.R. §550.58(a)(1)(vi), before Lopez, as a valid exercise of the Bureau's discretion).

62 Fed. Reg. At 53,690.  Nevertheless, the effect of the implemented interim regulation was to deny program eligibility to certain categories of inmates confined at that time and until promulgation of a final regulation.  The commentary to the interim regulation further provided that comments on the interim rule were due on December 15, 1997, and that the comments would be considered before final action was taken.[4]

Three years later, on December 22, 2000, the BOP replaced the 1997 interim regulation with a final regulation, which adopted the 1997 interim regulation without change.  See 65 Fed. Reg. 80,745.  The final regulation was effective as of December 22, 2000.  Id.  The commentary accompanying the final regulation noted that the BOP had received and considered approximately 150 comments from individuals and organizations, 138 of which were identical.  Id. at 80,747.  Thus, the final regulation read, in pertinent part, as follows:

> Consideration for early release.
>     An inmate who was sentenced to a term of imprisonment pursuant to the provisions of 18 U.S.C. Chapter 227, Subchapter D for a nonviolent offense, and who is determined to have a substance abuse problem, and

---

[4]  In Lopez v. Davis, while the Supreme Court held that the 1997 interim regulation's categorical exclusion of prisoners based on their involvement with firearms in connection with the commission of a felony was a permissible exercise of the Bureau's discretion, the Court declined to consider the arguments of various amici that the 1997 interim regulations violated the notice-and-comment provisions of the APA, as that argument had not been raised or decided below, or presented in the petition for certiorari.  531 U.S. at 230, 244 n.6.

> successfully completes a residential drug abuse
> treatment program during his or her current commitment
> may be eligible, in accordance with paragraph (a) of
> this section, for early release by a period not to
> exceed 12 months.
> (a) Additional early release criteria.
> (1) As an exercise of the discretion vested in the
> Director of the Federal Bureau of Prisons, the
> following categories of inmates are not eligible for
> early release:
> . . .
> (vi) Inmates whose current offense is a felony:
> . . .
> (B) That involved the carrying, possession, or use of a
> firearm or other dangerous weapon or explosives
> (including any explosive material or explosive device),
> ...

5 U.S.C. § 550.58 (2000).  See also BOP Program Statements

5330.10, *Drug Abuse Programs Manual – Inmate* (1997), and 5162.04,

§ 7, *Categorization of Offenses* (1997)("All offenses under 18

U.S.C. § 922(g) shall preclude an inmate from receiving certain

Bureau program benefits.").

The Administrative Procedure Act requires, with exceptions

not relevant here, that proposed rules be published in the

Federal Register, not less than 30 days before the proposed

rule's effective date, and provide a period for interested

persons to comment on the proposed rule, which comments are to be

considered by the agency prior to adopting the rule.  See 5

U.S.C. § 553(b), (c), (d).

Following promulgation of the 1997 interim regulation, the

United States Court of Appeals for the Ninth Circuit determined

that the 1997 interim regulation was invalid, for failure to

11

follow the notice-and-comment requirements of the APA.  See Paulsen v. Daniels, 413 F.3d 999 (9th Cir. 2005).  The 2000 final rule, however, complied with the notice-and-comment requirements. More recently, the Court of Appeals for the Ninth Circuit has held that the final 2000 rule is invalid, nevertheless, as "arbitrary and capricious" in violation of § 706(2)(A) of the APA, for failure to set forth a rationale for its categorical exclusion rule.  Arrington v. Daniels, 516 F.3d 1106 (9th Cir. 2008).  Without actually referencing the Arrington decision in his petition, it is clear from Gunn's arguments set forth in his petition that he is substantially relying on the Ninth Circuit's decision.[5]

In Arrington, the Ninth Circuit held that the BOP's promulgation of § 550.58 was "arbitrary and capricious" because the BOP failed to state, in the administrative record, an adequate rationale for its categorical exclusion of felons convicted of crimes that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives.

> A general desire for uniformity provides no explanation for why the Bureau exercised its discretion to achieve consistency through the promulgation of a categorical *exclusion* rule.  The Bureau's stated desire for uniformity could have been accomplished in any number of ways.  For example, the Bureau could have achieved uniformity by categorically *including* prisoners with non-violent convictions involving firearms, thus making them eligible

---

[5]  In his administrative appeal, however, Gunn expressly raised Arrington.

12

for early release: a result that would have been entirely
consistent with the statute's aim of offering incentives for
prisoner participation in residential substance abuse
programs.  Instead, it chose to achieve uniformity by
categorically *excluding* such prisoners from eligibility.
Although either choice in all likelihood would have
withstood judicial scrutiny, the Bureau offered no
explanation for why it exercised its discretion to select
one rather than the other.  The agency's lack of explanation
for its choice renders its decision arbitrary and
capricious.

Arrington, 516 F.3d at 1114 (emphasis in original)(citation

omitted).  The Ninth Circuit refused to consider the offered

rationale that offenders with convictions involving firearms pose

an increased risk to the public.  The public safety rationale,

the Ninth Circuit concluded, was not stated in the record and was

merely a post hoc rationalization.  Id.

    Nevertheless, virtually every court to consider the matter

has rejected the rationale of Arrington.  See Snipe v. Dept. of

Justice, 2008 WL 5412868 (N.D.W.Va. Dec. 23, 2008)(collecting

cases).  The Court of Appeals for the Sixth Circuit has held that

the Lopez[6] decision "does directly control" the argument that the

--------

[6]  As noted above, in Lopez, 531 U.S. at 240, the Supreme
Court agreed with the Bureau of Prisons' argument that "the
agency may exclude inmates either categorically or on a case-by-
case basis, subject of course to its obligation to interpret the
statute reasonably, see Chevron [v. Natural Resources Defense
Council, 467 U.S. 837, 884 (1984)], in a manner that is not
arbitrary or capricious, see 5 U.S.C. § 706(2)(A)."  The Court
went on, "Having decided that the Bureau may categorically
exclude prisoners based on their preconviction conduct, we
further hold that the [1997 interim regulation] is permissible.
The Bureau reasonably concluded that an inmate's prior
involvement with firearms, in connection with the commission of a
felony, suggests his readiness to resort to life-endangering

2000 regulation is arbitrary.  See Harrison v. Lamanna, 19 Fed.

Appx. 342, 2001 WL 1136080 (6th Cir. 2001).  See also Cushenberry

v. Federal Medical Center, 530 F. Supp.2d 908, 913 (E.D.Ky. 2008)

(same); Robinson v. Gonzaales, 493 F. Supp.2d 758, 763-64 (D.Md.

2007)(same); Chevrier v. Marberry, 2006 WL 3759909, *4-5

(E.D.Mich. 2006)("There is nothing unreasonable in the BOP's

common-sense decision that there is a significant potential for

violence from criminals who possess firearms.").


    In addition, the Court of Appeals for the Eighth Circuit has

explicitly rejected the Arrington standard that the rationale for

agency action, in a rulemaking case, must appear "on the record."

> The APA provides that a reviewing court must set aside a
> final agency action if it is "arbitrary, capricious, an
> abuse of discretion, or otherwise not in accordance with
> law."  5 U.S.C. § 706(2)(A).  Because this is a deferential
> standard, "the orderly functioning of the process of review
> requires that the grounds upon which the administrative
> agency acted be clearly disclosed and adequately sustained."
> SEC v. Chenery Corp., [318 U.S. 80, 94 (1943)].  "The courts
> may not accept appellate counsel's post hoc rationalizations
> for agency action."  Burlington Truck Lines, Inc. v. United
> States, [371 U.S. 156, 168 (1962)].  However, courts "will
> uphold a decision of less than ideal clarity if the agency's
> path may reasonably be discerned." Bowman Transp., Inc., v.
> Arkansas-Best Freight Sys., Inc., [419 U.S. 281, 286
> (1974)].

> These general principles, like 5 U.S.C. § 706(2)(A)
> itself, apply to both agency rulemaking and adjudication
> that is subject to the APA.  But most Supreme Court cases
> applying these principles -such as Chenery, Burlington Truck

---

violence and therefore appropriately determines the early release
decision." 531 U.S. at 244 (footnote omitted).

Lines, and Bowman - involved agency adjudications conducted
under 5 U.S.C. §§ 556-57 (or their APA predecessor), which
require that agency decisions be based on the administrative
record, and define what that record must include.  This case
involves agency rulemaking under 5 U.S.C. § 553, which
provides only that the agency shall publish notice of the
proposed rulemaking, afford interested persons an
opportunity to participate, and "incorporate in the rules
adopted a concise general statement of their basis and
purpose," § 553(c).  The Supreme Court has repeatedly
emphasized "that generally speaking this section of the Act
established the maximum procedural requirements which
Congress was willing to have the courts impose upon agencies
in conducting rulemaking procedures." Vt. Yankee Nuclear
Power Corp. v. Natural Res. Def. Council, Inc., [435 U.S.
519, 524 (1978) ], and cases cited. Under § 553, an agency
determination need not be made "on the record" unless the
statute being applied so requires.  United States v.
Allegheny-Ludlum Steel Corp., [406 U.S. 742, 756-57 (1972)].
Thus, the Ninth Circuit panel in Arrington erred when it
disregarded the BOP's public safety rationale simply because
the court could not find that rationale in an
"administrative record" which the court never defined but
seemed to limit to the BOP's Federal Register notice in 2000
finalizing the previously interim rule.

    Though rulemaking decisions, which are prospective and
legislative in nature, need not be made on a confined
administrative record, they still must be reviewed under
§ 706(2)(A) and "upheld, if at all, on the basis articulated
by the agency itself." Motor Vehicle Mfrs. Ass'n of the
U.S. v. State Farm Mut. Auto. Ins. Co., [463 U.S. 29, 50
(1983)]; see Menorah Med. Ctr. v. Heckler, 768 F.2d 292, 295
(8th Cir. 1985). In State Farm, the Court refused to enforce
an agency order rescinding a prior rule, explaining that "an
agency changing its course by rescinding a rule is obligated
to supply a reasoned analysis for the change beyond that
which may be required when an agency does not act in the
first instance." [463 U.S. at 42.] We have construed State
Farm as requiring a fuller explanation when "a new rule
reflects a departure from the agency's prior policies."
Macon County Samaritan Mem'l Hosp. v. Shalala, 7 F.3d 762,
765-66 (8th Cir. 1993).  Here, the BOP has consistently
sought to implement the same substantive policy in the face
of continued judicial resistance.  In these circumstances,
it is appropriate to discern the reasons for the agency's
final rule from the various prior interim rules, Program
Statements, and litigation positions reflecting that

consistent policy.  The Supreme Court discerned that public
safety was the basis for the BOP's exclusion of firearm
offenders and concluded that the agency's rule was
substantively reasonable in Lopez, [531 U.S. at 244.]  That,
we conclude, is all 5 U.S.C. §§ 553(c) and 706(2)(A)
require.  Accord Harrison v. Lamanna, 19 Fed. Appx. 342 (6th
Cir. 2001)(unpublished).

Gatewood v. Outlaw, 560 F.3d 843, 846-848 (8th Cir. 2009).

(footnotes omitted).

On January 14, 2009, a new final rule was published in the

Federal Register at 74 FR 1892 et seq., which finalized three

previously-published proposed rules on the drug abuse treatment

program.  In publishing the new final rule, the BOP provided a

more detailed explanation of its rationale for excluding from

eligibility for early release inmates convicted of offenses

involving he carrying, possessing, or using of firearms.

[I]n the correctional experience of the Bureau, the offense
conduct of both armed offenders and certain recidivists
suggests that they pose a particular risk to the public.
There is a significant potential for violence from criminals
who carry, possess or use firearms.  As the Supreme Court
noted in Lopez v. Davis, "denial of early release to all
inmates who possessed a firearm in connection with their
current offense rationally reflects the view that such
inmates displayed a readiness to endanger another's life."
Id. at 240.  The Bureau adopts this reasoning.  The Bureau
recognizes that there is a significant potential for
violence from criminals who carry, possess or use firearms
while engaged in felonious activity.  Thus, in the interest
of public safety, these inmates should not be released
months in advance of completing their sentences.

It is important to note that these inmates are not precluded
from participating in the drug abuse treatment program.
However, these inmates are not eligible for early release
consideration because the specified elements of these
offenses pose a significant threat of dangerousness or
violent behavior to the public.  This threat presents a

16

potential safety risk to the public if inmates who have demonstrated such behavior are released to the community prematurely.  Also, early release would undermine the seriousness of these offenses as reflected by the length of the sentence which the court deemed appropriate to impose.

74 FR 1892, 1895 (Jan. 14, 2009).  Effective March 16, 2009, 28 C.F.R. § 550.58 was superseded by a new regulation which appears at 28 C.F.R. § 550.55.  The new regulation applies to anyone whose clinical interview (to qualify for participation in the Residential Drug Abuse Treatment Program) takes place on or after March 16, 2009.  To coincide with the effective date of the new regulation, the BOP rescinded Program Statement 5162.04 and replaced it with Program Statement 5162.05, also effective March 16, 2009.

Pursuant to Program Statement 5162.05, as an exercise of the discretion vested in the Director of the Bureau of Prisons, eligibility for early release upon successful completion of the Residential Drug Abuse Treatment Program is denied for inmates whose current offense is a felony that involved the carrying, possession, or use of a firearm.  More specifically, inmates convicted of violating 18 U.S.C. § 922(g) are prohibited from early release upon successful completion of the Residential Drug Abuse Treatment Program.

IV. <u>ANALYSIS</u>

In the instant case, Gunn's RDAP clinical interview occurred before March 16, 2009, on March 13, 2009.  Therefore, Program

17

Statement 5162.04 applies, not P.S. 5162.05.  Gunn essentially
argues in his petition that Program Statement 5162.04 was
implemented in violation of the Administrative Procedure Act,
because it is "arbitrary and capricious," because the BOP does
not have authority to pass a rule categorically excluding certain
prisoners from early release, and because it is a violation of
equal protection and due process to apply the regulation
differently to prisoners outside of the Ninth Circuit, which has
invalidated the BOP regulation.  See Arrington v. Daniels, 516
F.3d 1106 (9th Cir. 2008).  Thus, Gunn contends that his
categorical exclusion from consideration for early release, as
determined by the BOP pursuant to Program Statement 5162.04, is
unlawful.

     Specifically with respect to Petitioner's claim that 5
U.S.C. § 550.58 and the implementing Program Statement are
"arbitrary and capricious" in violation of the Administrative
Procedure Act, the "arbitrary and capricious" standard of review
is "narrow."  A federal court may "find that an action is
arbitrary and capricious if the agency relied on facts other than
those intended by Congress, did not consider 'an important
aspect' of the issue confronting the agency, provided an
explanation for its decision which 'runs counter to the evidence
before the agency,' or is entirely implausible."  Rite Aid of
Pennsylvania, Inc. v. Houstoun, 171 F.3d 842, 853 (3d Cir.

1999)(quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43-44 (1983)).  Moreover, a federal court "must 'uphold [an agency's] decision of less than ideal clarity if the agency's path may reasonably be discerned.'" Rite Aid, 171 F.3d at 853 (quoting Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43)(internal citations omitted).  Indeed, "on occasion, regulations with no statement of purpose have been upheld where the agency's purpose was considered obvious and unmistakable." Citizens to Save Spencer County v. U.S. Environmental Protection Agency, 600 F.2d 844, 884 (D.C.Cir. 1979)(quoted with approval in Muolo v. Quintana, 2009 WL 82491 (W.D.Pa. Jan. 8, 2009)).

The Court of Appeals for the Third Circuit has explicitly held that the Bureau of Prisons articulated a sufficient rationale for the 2000 rule, codified at 28 C.F.R. § 550.58(a)(1)(vi)(B), to satisfy the "arbitrary and capricious standard set forth in APA § 706(2)(A).  The Court of Appeals held that the rationale could "reasonably be discerned" from the regulatory history and attendant litigation.  See Gardner v. Grondolsky, 585 F.3d 786 (3d Cir. 2009).  See also Muolo v. Quintana, 345 Fed. Appx. 736 (3d Cir. 2009).

The Court of Appeals noted that the BOP's efforts to categorically exclude felons convicted of possession of a dangerous weapon from eligibility for early release have remained consistent since 1995, that the BOP Program Statements have

consistently provided a "public safety" rationale for the exclusion, and that the Supreme Court, in Lopez, upheld both the reasonableness of the 1997 interim regulation and the BOP's public safety rationale for the regulation.  See Gardner, 585 F.3d at 792-93 (citing Gatewood v. Outlaw, 560 F.3d 843 (8th Cir. 2009).

The Lopez decision expressly governs the argument that the BOP lacks authority to categorically exclude certain classes of prisoners from the early release program.  Lopez, 531 U.S. at 240.

Finally, to the extent the Petition asserts claims that the BOP violated Gunn's equal protection and due process rights by continuing to enforce its early release regulations as written, except in the Ninth Circuit, pursuant to the Arrington decision, the argument is patently meritless.  See, e.g., Caro v. Ziegler, 2009 WL 1872977 (N.D.W.Va. June 29, 2009); Mack v. Eichenlaub, 2009 WL 1849961 (N.D. Fla. June 26, 2009), R & R adopted, 2009 WL 2365706 (N.D. Fla. June 29, 2009); Carver v. Chapman, 2009 WL 1651512 (N.D. Tex. June 11, 2009); King v. Federal BOP, 2009 WL 274948 (D.S.C. March 23, 2009), affirmed, 2009 WL 2337116 (4th Cir. July 30, 2009); Norcutt v. Zych, 2009 WL 514083 (E.D.Mich. March 2, 2009); Minotti v. Whitehead, 584 F. Supp.2d 750, 760 n. 12 (D.Md. 2008)(also noting that prisoners have no due process right to early release).

For all of the foregoing reasons, Gunn is not entitled to relief on this Petition.

IV.   <u>CONCLUSION</u>

For the reasons set forth above, Gunn's renewed Petition for habeas relief under 28 U.S.C. § 2241, in which he challenges his exclusion from consideration for early release under 18 U.S.C. § 3621(e), will be dismissed with prejudice for lack of merit. An appropriate order follows.

<u>s/Renée Marie Bumb</u>
RENÉE MARIE BUMB
United States District Judge

Dated:<u> October 12, 2010</u>